UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| AARON QUICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-CV-056 JD |
| | ) | |
| CITY OF FORT WAYNE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

This is an employment discrimination case brought under the Americans with Disabilities

Act (the ADA), 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The Plaintiff,

Aaron Quick, asserts that the Defendant City of Fort Wayne (the City) terminated him from his

position as a police recruit on account of a perceived disability and his race.[1] The City has filed

a motion for summary judgment that seeks judgment in its favor on all of Quick's claims. [DE

25]. That motion is now fully briefed by the parties and is ripe for review. [DE 26, 29, 32, 35,

38-1].

### STANDARD OF REVIEW

Summary judgment is appropriate when there "is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir.

2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To survive a motion

---

[1] While the Plaintiff pled a worker's compensation retaliation claim in his complaint and raised a gender
discrimination claim for the first time in his response, he has since clarified that he is pursuing neither of those
claims. [DE 29 at 17]; [DE 38-1 at 1 n. 1]. As such, the Court does not address them.

for summary judgment, the party with the burden of proof "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Since the Court is evaluating a motion for summary judgment filed by the Defendant, it will construe all disputed facts in the light most favorable to the Plaintiff. *See Anderson*, 477 U.S. at 255 (at the summary judgment stage "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

**FACTS**

The facts in this case are straightforward and largely undisputed. Plaintiff Aaron Quick is a white male. In 2014, he was hired as a recruit by the Fort Wayne Police Department (FWPD). At that time, Quick had substantial law enforcement experience and was both a graduate of and instructor at the Indiana Law Enforcement Academy (ILEA). Nevertheless, the FWPD conditioned Quick's employment on successful completion of its own academy. While the Fort Wayne Police Department Academy (the Academy) is certified through ILEA, the Department believes that it provides more rigorous and regionally specific training than ILEA and generally requires its recruits to graduate from it.

Quick started at the Academy on February 10, 2014. On February 12, 2014, his back began to hurt while he was on his way home. The pain became so severe that he went to the emergency room. The next morning, he saw an examining physician who diagnosed him with a lumbar strain (later characterized as lumbar disc displacement) and cleared him to return to the Academy with certain restrictions, including that he alternate between sitting and standing as needed and not bend over or lift more than five pounds.

Quick then returned to the Academy, where his instructor exempted him from physical

training and provided him a reclining chair. Quick's back did not immediately improve, however, and on February 17 his medical staff further instructed that he should lie down when his back pain flared. Quick communicated this new restriction to his Academy instructor, Captain Shane Lee, who informed Quick that the Academy could not accommodate it. Accordingly, Lee told Quick that he should stay home until he no longer needed to lie down, but cautioned that if he missed more than ten days he would be dismissed from the Academy consistent with the Academy's written attendance policy. Quick did not return to the Academy and was dismissed on February 27, 2014. At that time, his back was improving, though he still sometimes needed to lie down briefly. He was not released to return to work by his physical therapist until March 13, 2014.

In an effort to save his job, Quick requested that he be permitted to bypass the Academy and instead rely on his ILEA certification. As noted above, that is the same certification that recruits obtain upon successful completion of the Academy. The FWPD had previously made this accommodation to seven individuals, though had not done so since 2011. Of these, two were Hispanic and fluent Spanish speakers, two would have been over the maximum age permitted by the Academy and three were required to attend an abbreviated Academy course. By 2014, however, the FWPD was moving away from hiring individuals outside of the Academy due to bad experiences with lateral candidates. Ultimately, the Department denied Quick's request to rely on his ILEA certification, though invited him to apply for the next Academy class beginning in January 2015.

Believing that the FWPD had refused to permit him to rely on his ILEA certification and fired him on account of his race and back injury, Quick subsequently filed a tort claims notice

3

with the City and a complaint with the EEOC.  The EEOC responded with a right to sue letter on

December 30, 2014 and this suit followed on February 24, 2015.

Since filing suit, Quick has learned that the City is hiring lateral recruits as of February

2016.  The City has indicated that it decided to do so in response to plans by Fort Wayne to

annex territory incorporating 22,000 new citizens, which would create demand for twelve new

officers.

**ANALYSIS**

Quick's Surreply

Before turning to the merits of this case, the Court first addresses Quick's motion to file a

surreply.  [DE 38].  Quick contends that the Court should permit him to file a surreply because

the City attached supplemental declarations from three witnesses to its reply brief.   The City

responds that Quick's surreply is irrelevant, late, reiterates arguments Quick has already made

and amounts to sandbagging.

While this Court's rules do not expressly permit surreplies, they do not categorically bar

them either.  *See Merril Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, No. 2-09-CV-158, 2009

WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009).  "Rather, a surreply brief is occasionally allowed

when it raises or responds to some new issue or development in the law." *Id.*  (alteration and

internal quotation marks omitted).  In this case, the City filed three declarations dated March 31,

2016, weeks after the Plaintiff filed his response.  While the City may find Quick's arguments

irrelevant, duplicative and otherwise unavailing, the Court believes that Quick is entitled to

respond to evidence that was not previously in the record.  *See Cummins, Inc. v. TAS Distrib.*

*Co.*, 676 F. Supp. 2d 701, 706 (C.D. Ill. 2009) ("Typically, a surreply is allowed where the

moving party raises new factual or legal issues in its reply brief, in order to ensure that the non-

moving party has an adequate chance to respond to the new issues."); S.D. Ind. L.R. 56-1(d)

(permitting surreplies where a movant files new evidence in a reply brief). Further, this decision

comes at no prejudice to the City, which has indicated that the surreply does not alter its core

argument. As such, the Court grants Quick's motion to file a surreply.

ADA Claim

The Court thus turns to the merits of Quick's claims. Quick first contends that the City

terminated him in violation of the ADA. To avoid summary judgment on such a claim, he must

demonstrate a genuine issue of material fact as to: (1) whether he was disabled, (2) whether he

was qualified to perform the essential functions of his job and (3) whether he was terminated

because of his disability. *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 622 (7th Cir. 2012).

*Disability*

The ADA defines disability as "(a) a physical or mental impairment that substantially

limits one or more major life activities . . . (b) a record of such impairment; or (c) being regarded

as having such an impairment." *Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No.*

*524*, 795 F.3d 698, 706 (7th Cir. 2015) (citing 42 U.S.C. § 12102(1)). Quick brings his claim

under prong (c). That requires him to show that the City "perceived him as having an

impairment, 'whether or not the impairment limits or is perceived to limit a major life activity.'"

*Id.* (quoting 42 U.S.C. § 12102(3)(A)). Quick claims that the City regarded him as disabled on

account of his back injury.

The City responds that this impairment was both transitory and minor. That would

foreclose Quick's claim, since the regarded as prong of the ADA does not apply to impairments

that meet those criteria. *Id.* The standard is an objective one: the City must prove that the

perceived impairment was actually transitory and minor. *Id.* Here, since Quick claims that an

actual impairment caused the City to regard him as disabled, it is proper to evaluate whether that

actual impairment was transitory and minor. *Nevitt v. U.S. Steel Corp.*, 18 F. Supp. 3d 1322,

1329 (N.D. Ala. 2014) ("in situations where a plaintiff claims his actual impairment caused a

covered entity to regard him as disabled, it is certainly proper for courts to evaluate whether the

actual impairment is 'transitory and minor'").

Since the parties agree that Quick's back condition was transitory, this issue hinges on

whether it was minor. The Court accordingly considers the extent of Quick's injury. Construed

in the light most favorable to the Plaintiff, the evidence shows that Quick injured his back while

doing sprinting exercises at the Academy on February 12, 2014. [DE 29-7 at 1]. He then went

to the emergency room because his back was in "excruciating pain" and he was losing feeling in

his leg. [DE 29-1 at 39]. The next day a doctor determined that he likely had a "lumbar strain,"

which was later diagnosed as "lumbar disc displacement." [DE 26-1 at 70]; [DE 29-7 at 1].

Quick then began physical therapy and attended eleven outpatient visits over the next month. By

March 12, 2014, he was able to complete pushups, situps, a mile-and-a-half run and a forty-yard

dash without pain. [DE 26-1 at 36]. The next day, Quick's doctor discharged him from care and

determined that he was "100% better." [DE 29-7 at 2].

The Seventh Circuit has not clearly defined what constitutes a "minor" impairment. It

has held only that an injury dissimilar to this one—a heart condition severe enough to require

triple bypass surgery—was not minor where the Defendant offered no evidence that it was. *Silk*,

795 F.3d at 706-07. However, other courts have deemed incidents comparable to Quick's, in

which a plaintiff suffers an acute injury and then makes a swift and complete recovery, to be

minor. *See Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475 (N.D. Tex. 2015) (finding an

impairment to be minor where the Plaintiff was admitted to the emergency room with

dehydration and possible heat stroke, and had difficulty walking, seeing and communicating, but

made a full recovery shortly thereafter); *Percoco v. Lowe's Home Centers, LLC*, No. 3:14-CV-

01122, 2015 WL 5050171, at *2 (D. Conn. Aug. 25, 2015) (deeming injuries minor on a motion

to dismiss where the plaintiff alleged injuries to her head, face, lips, tongue, teeth, neck and chest

resulting from a car accident but recovered within a week).[2]  Moreover, while Quick emphasizes

that his injury was extremely painful, an injury is not non-minor simply because it originates

with intense pain.  *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259-60 (3d Cir.

2014) (finding broken finger to be transitory and minor on a motion to dismiss");  *Clark v. Boyd

Tunica, Inc.*, No. 3:14-CV-00204, 2016 WL 853529, at *6 (N.D. Miss. Mar. 1, 2016) (collecting

cases that hold that broken bones are transitory and minor[3]);  *E.E.O.C. v. Orion Energy Sys., Inc.*,

No. 14-CV-619, 2015 WL 4067776, at *4 (E.D. Wis. July 2, 2015) (noting that an employer was

aware that the plaintiff was actually disabled where it was apparent that he did not just fracture a

bone or injure a knee or ankle).  Accordingly, the Court finds that no reasonable juror could

conclude that Quick's back injury was other than transitory and minor.  That prohibits him from

being "regarded as" disabled and thus forecloses his ADA claim.

   *Essential Functions of Employment*

   Quick's claim fails for another reason as well.  To recover, he must show that he was

qualified to perform the essential functions of his position.  *See Dyke v. O'Neal Steel, Inc.*, 327

F.3d 628, 634 (7th Cir. 2003); *Stragapede v. City of Evanston*, 69 F. Supp. 3d 856, 860 (N.D. Ill.

---

[2] While the Plaintiff seeks to rely on *Cohen v. CHLN, Inc.*, No. CIV.A. 10-00514, 2011 WL 2713737 (E.D. Pa. July 13, 2011), that case is readily distinguishable.  There the Plaintiff offered "significant evidence that he was perceived to have a severe, on-going impairment."  *Id.* at *8.  For months before his termination he "walked with a cane at work and was often seen limping slowly or doubled over with pain."  *Id*.

[3] While these cases offer persuasive guidance, they equate a "transitory" impairment with a "minor" impairment.  In contrast, the Seventh Circuit has indicated that these are separate criteria that must be independently satisfied.  *Silk*, 795 F.3d at 706.

2014).  The factors the Court considers to determine if a particular duty is an essential function

include "the employee's job description, the employer's opinion, the amount of time spent

performing the function, the consequences for not requiring the individual to perform the duty,

and past and current work experiences."  *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285–

86 (7th Cir. 2015); *see also* 29 C.F.R. § 1630.2(n)(3).  Generally, an employer is permitted to

determine the job responsibilities of its employees and the Court will not "second-guess that

judgment so long as the employer's reasons are not pretextual."  *Basith v. Cook Cty.*, 241 F.3d

919, 929 (7th Cir. 2001); *accord Ammons v. Metro. Water Reclamation Dist. of Greater*

*Chicago*, No. 08 C 5663, 2012 WL 689178, at *7 (N.D. Ill. Mar. 1, 2012) ("the court defers to

the employer's determination of essential functions so long as the employer's reasons are not

pretextual") (internal quotation marks omitted).  Moreover, "the Seventh Circuit has emphasized

the 'special need for deference to the employment decisions of those responsible for ensuring

public safety.'"  *Robert v. Carter*, 819 F. Supp. 2d 832, 844 (S.D. Ind. 2011) (quoting *Kokkinis v.*

*Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999)).

The City argues that Quick's claim must fail because he was unable to complete the

Academy, which was an essential function of his employment.  Quick offers no persuasive

argument to the contrary.  Rather, he admits that Academy training was a legitimate requirement

of his employment. [DE 29 at 2] ("Quick does not dispute the City's recitation of the alleged

benefits of its own Academy and its desire for its recruits to graduate from the same."); [DE 29

at 4] ("Quick does not dispute that his conditional offer of employment with the FWPD required

him to satisfactorily complete the 20-week FWPD Academy class.").  He also does not dispute

that he could not complete the Academy due to his back problems. [DE 29 at 1] ("Quick

severely injured his back during the first week of training and needed accommodations to

8

continue with training."); [DE 29 at 6] ("Quick . . . missed more than 10% of the mandatory core

topics, and he was removed from the Academy."). That squarely forecloses his claim. *See*

*Robert*, 819 F. Supp. 2d at 845 (finding civil deputy process server's ADA claim foreclosed

where he was unable to participate in taser training, which was an essential function of his

employment).

But even setting these admissions aside, the evidence indicates that Academy attendance

was a legitimate, non-pretextual job requirement that Quick was unable to fulfill. When the City

accepted Quick as a recruit, it knew he was ILEA certified and nevertheless decided to require

him to complete Academy *before* he was ever injured. [DE 26-1 at 26]. That decision simply

could not have been a pretext for discrimination on account of an injury that had not yet

occurred.

So Quick must show that the FWPD's decision to adhere to its initial determination and

again refuse to exempt Quick from the Academy after he injured his back was made on account

of that injury. His only purported basis for doing so is that the City previously permitted seven

other officers to join the Fort Wayne Police Department with ILEA certification rather than

attending the Academy. But these officers joined years ago and under largely distinguishable

circumstances. Two were Spanish speakers, unlike Quick, for which the Department had a

pressing need. And they joined in 2003 and 2006 when the Department had no upcoming

Academy class scheduled. [DE 26-1 at 14-16]. Two, unlike Quick, would have been unable to

attend the Academy due to age restrictions when they were hired in 2011 and 2004. [DE 26-1 at

7].[4] The remaining three, hired "well before 2011," *were* required to attend the Academy, but

---

[4] Plaintiff's counsel submitted an "affidavit" by one of these individuals that is not signed. That, of course, deprives it of its evidentiary value. *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 729 (N.D. Ill. 2015); *Sellers v. Henman*, 41 F.3d 1100, 1101 (7th Cir. 1994). Nevertheless, this is an issue of little consequence, since the information it contains is found elsewhere in the record. [DE 37 at 1].

were simply permitted to attend an abbreviated course. [DE 35-1 at 2]. Thus, the officers

permitted to rely on their ILEA certification provide no basis for calling into question the

honesty of the City's representation that Academy attendance was an essential function of

Quick's employment as of 2014. In fact, Quick himself testified that as of 2014 the Department

was leaning away from accepting lateral candidates because the City had hired a few people

"through the lateral process in the past that didn't turn out to be very good candidates." [DE 24-

1 at 28]. And, since the Court considers the plaintiff's ability to satisfy the essential functions of

his employment at the time of termination, that precludes his claim. *See Stern*, 788 F.3d at 287;

*Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 680

(7th Cir. 2010) (a plaintiff "cannot prove that she is qualified for her current job simply by citing

evidence that she was qualified for a previous job, with different essential functions, that has

been eliminated").[5]

Finally, Quick argues that he could have performed the essential functions of his

employment had the City offered him a reasonable accommodation. Specifically, he says that he

could have performed all functions of a FWPD officer had the City permitted him to bypass the

Academy and rely on his ILEA certification. This argument, however, is squarely foreclosed by

the ADA. Plaintiffs like Quick who do not allege an actual disability, but only that their

employers regarded them as having a disability, are not entitled to a reasonable accommodation.

42 U.S.C. § 12201(h); *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 n. 4 (7th Cir. 2013) ("The

amendments to the ADA clarified that employers needn't provide reasonable accommodation to

---

[5] Quick also says that postings on the FWPD and ILEA websites indicate that the FWPD is hiring lateral candidates
as of February 1, 2016. [DE 32 at 1]. Once, again this is not evidence of the essential functions of Quick's
employment at the time he was terminated. Further, it provides no reason to call the honesty of the City's 2014
hiring requirements into question, as the undisputed evidence demonstrates that the City's lateral hiring was
motivated by the City's recent plans to annex territory that will increase the City's population by 22,000 and create
an immediate need for twelve new officers. [DE 35-1 at 1].

a 'regarded as' disabled individual. 42 U.S.C. § 12201(h)."). As such, Quick was required to

meet the essential functions of his employment without any accommodation. Because he could

not do so, his ADA claim is foreclosed. Since that is the second independent reason Quick's

ADA claim fails, the Court declines to proceed to the third prong of the ADA analysis.[6]

Title VII and § 1981 Race Discrimination Claims

That leaves Quick's race discrimination claims under § 1981 and Title VII. Since the

legal analysis for discrimination claims arising under § 1981 and Title VII is identical, the Court

evaluates them together. *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015).

Both statutes prohibit discrimination in employment on account of race and extend to so-called

"reverse discrimination" against white employees. *Koehler v. Infosys Techs. Ltd. Inc.*, 107 F.

Supp. 3d 940, 945 (E.D. Wis. 2015). Quick asserts that the City discriminated against him by

refusing to permit him to substitute his ILEA certification for the Academy and consequently

terminating him because he is white.

While Quick attempts to proceed via both a direct and an indirect method of proof, the

Seventh Circuit recently jettisoned these as distinct tests. *Ortiz v. Werner Enterprises, Inc.*, No.

15-2574, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016). Rather, "all evidence belongs in a

single pile" and the Court focuses on one straightforward inquiry: "whether the evidence would

permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge." *Id.*

at *4-5. That said, *Ortiz* did not abrogate the burden shifting framework of *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973). Accordingly, the Court will first consider whether the

evidence taken as a whole fits the *McDonnell Douglas* framework. If it does not, the Court will

then step back and, again considering *all* evidence, determine whether a reasonable juror could

---

[6] Accordingly, the Court declines to consider the issues raised by the parties as to the identity and motivation of the individual(s) that decided to terminate Quick.

conclude that Quick was fired because he was white. *See Knapp v. Evgeros, Inc.*, No. 15 C 754, 2016 WL 4720026, at *7 (N.D. Ill. Sept. 9, 2016).

In a reverse race discrimination case, the *McDonnell Douglas* approach requires a *prima facie* showing that "(1) background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (internal quotation marks omitted).

It is immediately obvious that Quick does not satisfy these criteria. First, he does not present any background circumstances showing that the FWPD had a reason to discriminate against whites or anything 'fishy' about the facts of his case. *See id*. at 512 (finding that a Plaintiff failed to make out a *prima facie* case of reverse race discrimination under *McDonnell Douglas* where he did not make this showing). Second, Quick was unable to complete Academy training, which, as discussed above, the evidence indicates was a legitimate non-pretextual expectation of his employment. Third, Quick does not identify any employee similarly situated to himself that was treated more favorably than he was. While he points to the two Hispanic officers who were permitted to substitute ILEA certification for Academy attendance in 2003 and 2006, he fails to show that he was similarly situated to them. *See Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (noting that it is necessary to eliminate variables such as differing roles and performance histories to draw an inference of discrimination from the differential treatment of employees). As noted above, those officers were fluent Spanish speakers and the record indicates that the Department had a pressing need for Spanish-speaking officers when

they were hired.  Indeed, Quick readily admits that had he been able to speak another language

"the same preferential treatment may have been extended to him" as was shown to those officers.

[DE 29 at 16].  The Spanish-speaking officers were also hired years before Quick and before the

Department began "leaning away from accepting laterals due to bad experiences in the past."

[DE 26-1 at 28].  Thus, Quick does not identify any viable comparator.  As such, he cannot

survive summary judgment through application of the *McDonnell Douglas* factors.

So, the Court steps back and, free of the doctrinal snares abrogated by *Ortiz*, simply

considers all evidence to determine whether a reasonable juror could conclude that Quick was

terminated on account of his race.  The answer is clearly not.  The *only* evidence of racial

discrimination that Quick offers is the flawed comparison that he attempts to draw between

himself and the above-discussed Hispanic officers.[7]  Two bits of evidence further suggest an

absence of race bias.  First, at least four of the seven individuals identified by the parties who

were permitted to bypass the Academy in favor of ILEA certification were white.  [DE 35-1 at

2]; [DE 24-1 at 7]; *see also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 643 (7th Cir. 2008)

(noting that a pattern where the protected-class members sometimes do better and sometimes do

worse than their comparators is not evidence of prohibited animus).  Second, the Academy

invited Quick to submit an application for the January 2015 Academy class, providing what it

characterized as "a very clear path to achieving your goal" of becoming a FWPD officer.[8]  [DE

26-1 at 78].  That is not consistent with a desire to exclude white employees from the police

---

[7] In arguing his race discrimination claim, Quick also points to a comment by his training officer that a bad back can end a police officer's career and evidence that a white male with a broken leg was permitted to bypass the Academy and rely on his ILEA certification.  This evidence, while perhaps relevant to his ADA claim (which fails for reasons discussed above) is entirely irrelevant to the issue of race discrimination.

[8] While Plaintiff's counsel says the offer of permitting Quick to begin the hiring process again was a ruse and that the City knew no reasonable individual could afford to start over at the Academy, Quick provides no evidence to support that assertion.

force.  The evidence thus demonstrates a total absence of racial animus and Quick's Title VII

and § 1981 claims fail.

## CONCLUSION

The Plaintiff's motion to file a surreply [DE 38] and the Defendant's motion for summary

judgment [DE 25] are **GRANTED**.  The Court directs the Clerk to enter judgment for the City of

Fort Wayne against Aaron Quick.

SO ORDERED.

ENTERED:  September 27, 2016

     /s/ JON E. DEGUILIO
Judge
United States District Court
